# DE FOREST *v.* THE UNITED STATES.

PRACTICE; MOTION TO STRIKE OUT; DISCRETION; OBJECTIONS TO EVIDENCE; CRIMINAL LAW; BAWDY HOUSES; CHARGE TO JURY; COMMON LAW OFFENCES.

1. The allowance or refusal of a motion to strike out testimony which has been admitted without objection, is usually a matter of discretion with the trial court, which can not be reviewed on appeal; and it is only where the objection could not have been taken more seasonably that an exception is made to this rule.

2. When objection is made to the introduction of testimony the specific ground of objection should be stated, so that it may appear upon the record, and also that the other party may have an opportunity to obviate it.

3. The exclusion of testimony can not properly be assigned as error when the record fails to show any specific offer of proof was made.

4. The mere keeping of a bawdy house, where others and not the keeper commit acts of immorality, is of itself a disorderly act; and a person may be guilty of a criminal offence in so doing whose conduct may be otherwise unobjectionable or even irreproachable.

5. In a prosecution for keeping a bawdy house, it is not necessary for the Government to prove the business is conducted openly and notoriously, but it is sufficient if it be shown that the house is commonly resorted to for the commission of acts of immorality and that the proprietor knows the fact and either procures it to be done, connives at it, or does not prevent it.

6. In such a prosecution, a statement in the trial court's charge to the jury that every person is presumed to have knowledge of that which goes on in his own house, and that if it should be shown that persons continuously resort to such house for immoral purposes, the proprietor of the house would be held responsible for keeping an immoral house, is not erroneous. While the presumption of innocence continues until guilt is shown, guilt may be shown circumstantially as well as directly, and when circumstances of guilt are shown the presumption of guilt displaces the presumption of innocence.

7. An assignment of error can not be sustained when based upon an exception taken to a larger part of a charge to the jury in bulk, which part contains several plainly unexceptional propositions of law.

8. The common law of England in all its branches both civil and criminal remains to-day the law of the District of Columbia, except where it has been repealed by express statutory enactment, or modified by inconsistent legislation, or where it has become obsolete or unsuited to our republican form of government.

9. The keeping of a bawdy house was a common law offence and is punishable as such in this District.

No. 728.   Submitted November 1, 1897.   Decided November 16, 1897.

IN ERROR to the Police Court of the District of Columbia. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Fulton & Edwards* for the plaintiff in error.

*Mr. Henry E. Davis,* United States Attorney for the District of Columbia, and *Mr. D. W. Baker,* Assistant Attorney, for the United States.

Mr. Justice MORRIS delivered the opinion of the Court:

This is the first appeal taken to this court from the Police Court of the District of Columbia under the act of Congress of March 2, 1897, authorizing such appeals. By information filed in that court the appellant was charged with keeping and maintaining a common bawdy house; and being by the verdict of a jury found guilty, she has brought her cause here upon exceptions to the rulings of the trial court in the course of the cause. Three of these exceptions have reference to the admission of evidence, six to action of the trial court in the matter of instructions to the jury, and one to the refusal of the trial court to allow a motion in arrest of judgment.

With reference to the first class of exceptions specified, it appears that at the trial an officer of the police force was called by the prosecution to testify that he had caused the arrest of the appellant upon information given to him by a former female inmate of the appellant's house; that another officer was also called in corroboration of the previous wit-

ness, and to state in detail the statements concerning the appellant's business that had been made by the female inmate referred to, who, it seems, had in the meantime left the city; and that thereupon objection was made on the part of the appellant to such statements, and a motion was made to strike them out, which the trial court declined to do. ˙ And this is here assigned as error.

But while if objection had been interposed at the proper point this testimony might possibly have been excluded as hearsay, and therefore as irrelevant, it does not follow that after it had been introduced without objection the parties have the right afterwards to go back and to move to have it stricken out. The allowance of such a motion is usually a matter of discretion with the trial court, which can not properly be reviewed on appeal. *Davis* v. *Patton*, 19 Md. 120; *Cecil Bank* v. *Heald*, 25 Md. 562. That there are cases where such motion should prevail, and where it would be error not to allow it, may be admitted. But such cases would generally be those in which the objection could not have been taken more seasonably. For it is undoubtedly a wise rule of practice that objections to the admission of testimony must be interposed seasonably; that is, ordinarily as soon as the testimony is offered and before it is adduced. *Alexander* v. *United States*, 138 U. S. 353; *Bull* v. *Schoberth*, 2 Md. 38. Otherwise, there would be no order in the introduction of testimony. And it is also a well settled rule of practice that when objection is made to the introduction of testimony the specific ground of objection should be stated, so that it may appear upon the record, and also that the other party may have an opportunity to obviate it. This rule is fortified by repeated decisions of the Supreme Court of the United States· *Toplitz* v. *Hedden*, 146 U. S. 252; *Noonan* v. *Caledonia Gold Mining Co.*, 121 U. S. 393. Neither of these rules, the one which requires objection to be interposed seasonably, and that which requires the specific ground of objection to be stated, seems to have been observed in the present instance·

Nor are we at all certain from the circumstances of the record that the testimony here in question was absolutely inadmissible.

At a subsequent stage of the case, it was sought on behalf of the defence to elicit from a witness called on that side a statement of the reason given to her by a preceding witness who had testified for the prosecution as to the reason why she had so testified. This was excluded by the trial court, upon its appearing that no one else was present at the conversation. Whether the ground here stated for the exclusion of the proposed testimony was a correct one, we need not stop to consider. Plainly there is no error manifested here by the record. It does not appear how the proposed testimony was in any way relevant. There is no specific offer of proof, as should have been made, if it was intended to rely upon any such testimony; and it is impossible from the record to conjecture its purpose, unless it were to impeach the credibility of the preceding witness; and for that no sufficient foundation had been laid by the interrogation of the witness sought to be impeached.

At the conclusion of the testimony for the prosecution, and again at the conclusion of all the testimony, motion was made on behalf of the appellant that the jury should be directed to render a verdict in her favor, on the ground that the prosecution had failed to make out a case against her. The first motion, of course, was waived by the defendant's going into testimony; and both motions are equally untenable on the record. There was certainly enough in the case to warrant its submission to a jury; and the trial court would not have been justified upon the evidence in withdrawing it from them.

An instruction was asked by the defendant "that unless it was shown that the defendant is individually guilty of acts disorderly in themselves, the jury should find for the defendant;" and error is assigned upon its refusal. The refusal was so clearly proper that argument upon the subject

would be wholly superfluous. The mere keeping of a bawdy house, where others and not the keeper commit acts of immorality, is of itself a disorderly act; and a person may be guilty of a criminal offence in so doing whose conduct may be otherwise unobjectionable, or even irreproachable.

And a similar remark will apply to another instruction asked, to the effect "that the attendants of the house are not patrons thereof, and that any act of adultery committed by them does not *per se* constitute a bawdy house." It is the act of immorality committed by the attendants of a house so-called with the so-called patrons of it that constitute the bawdy house; and such were the acts apparently disclosed by the testimony in this case.

Error is also assigned upon the refusal of an instruction requested on behalf of the appellant, to the effect "that in order that the defendant's house should be declared a bawdy house the burden of proof is upon the Government to show that it is open, notorious and scandalous to the public, and in the event of the failure of the Government to show that such house is so open, notorious and scandalous for its disorder, then the jury should find for the defendant." And in support of this proposition are cited the cases of *Brooks* v. *State*, 2 Yerger (Tenn.), 482, and *King* v. *People*, 83 N. Y. 587. But the case of *Brooks* v. *State* is not in point, and that of *King* v. *People* maintains a proposition directly the reverse of that for which the appellant contends.

In the case of *Brooks* v. *State*, the indictment was for an offence, lewdness, which, in order to be indictable, must necessarily have been open, notorious and a public scandal. And to that effect are the old English authorities cited in the opinion.

The case of *King* v. *The People* was, like the present case, a prosecution for keeping a bawdy house; and there the Court of Appeals of the State of New York said:

"The keeping of a common bawdy or gambling house constitutes the house so kept a disorderly house and an in-

dictable nuisance at common law. *Rex* v. *Dixon*, 10 Mod. 335; 1 Hawk. P. C. 603. It is a public offence for the reason that its direct tendency is to debauch and corrupt the public morals, to encourage idle and dissolute habits, and to disturb the public peace. It is not an essential element that it should be so kept that the neighborhood is disturbed by the noise, or that the immoral practices should be open to public observation." See also to the same effect the cases of *Cheek* v. *Commonwealth*, 79 Ky. 359, and *Thatcher* v. *State*, 48 Ark. 60.

Instead of their being open and notorious, in the sense of the instruction requested on behalf of the defendant, it is well known that disorderly houses of the character here indicated are generally sought to be surrounded with an air of mystery and secrecy to keep the knowledge of them from the general public; and that while they seek a certain notoriety among their patrons, or those likely to become their patrons, concealment of the true character of their nefarious business is the purpose of their managers and conductors. To ask, therefore, that these houses should not be regarded as bawdy houses, or their owners or managers as not liable to criminal prosecution for maintaining public nuisances, unless the business is conducted openly and notoriously, would be to seek to nullify the law. It is enough that the acts done are contrary to law and subversive of the public morals, that the house is commonly resorted to for the commission of such acts, and that the proprietor knows, or should in reason know, the fact, and either procures it to be done, connives at it, or does not prevent it. See *Regina* v. *Rice*, L. R. I. C. C. R. 21; *Commonwealth* v. *Wood*, 97 Mass. 225; *Commonwealth* v. *Gannett*, 1 Allen, 7; *McCain* v. *The State*, 57 Ga. 390; *Sylvester* v. *The State*, 42 Tex. 496.

In the next place error is assigned upon an exception taken as a whole to a large part of the charge of the court to the jury, in which, in the part to which the objection seems

to be specially directed, the trial justice stated that every person is to be presumed to have knowledge of that which goes on in his own house, and that, if it should be shown that persons continuously resort to such houses for immoral purposes, the proprietor of the house would be held responsible for keeping an immoral house.   It is argued that this instruction is contrary to the fundamental principle of the criminal law that every person is to be presumed innocent until it is shown beyond reasonable doubt that he is guilty. But we fail to find any force in this argument.

Undoubtedly the presumption of innocence continues until guilt is shown; but guilt may be shown either by direct evidence, which probably in the greatest number of cases is wholly impracticable, or by circumstances from which, according to the usual laws of reason and common experience, guilt is clearly inferable.   When these circumstances are shown, the presumption of guilt displaces the presumption of innocence.   The charge of the court, therefore, in this regard was certainly right and proper.   But it should be added that this assignment of error could not be sustained in any event, inasmuch as the exception upon which it is based was taken to a larger part of the charge in bulk, which contains several plainly unexceptionable propositions; and it is well settled law that when exceptions are so taken and there is even one unexceptionable proposition, the exception can not be sustained.   *Lincoln* v. *Claflin,* 7 Wall. 132; *Cooper* v. *Schlesinger,* 111 U. S. 140; *Railroad Co.* v. *Jurey,* 111 U. S. 148; *Anthony* v. *Railroad Co.,* 132 U. S. 172.

The appellant's last assignment of error is founded upon the refusal of the trial court to allow the motion in arrest of judgment, which motion is based upon the theory that the appellant's offence was a common law offence, and not one made such by any statute of the United States, and that there are no common law offences against the United States. And in support of this position the case of *United States* v. *Eaton,* 144 U. S. 677, and others are cited.

In the case of *United States* v. *Eaton,* and in the several other cases therein referred to, it is stated in very broad and sweeping language, that "it is well settled law that there are no common law offences against the United States." And yet it is perfectly apparent that the statement is to be qualified with reference to the circumstances under which it was made. As against the United States regarded as coextensive with the Federal union of States and operating within the territorial limits of the States, it is undoubtedly true that there are no common law offences; for the jurisdiction there given to the United States by the Federal Constitution is distinctly and expressly restricted to the powers enumerated in the Constitution. But the statement was not intended to have application to the District of Columbia. The question as to the authority of the United States in this District is not what power has been conferred upon it, but rather what power has been inhibited to it. Subject to the limitations imposed by the Constitution itself and by the spirit of our free institutions, the United States have supreme and exclusive power over the District of Columbia, and they are not limited to the governmental powers in the Constitution specifically enumerated as defining their jurisdiction for the country at large. For the District of Columbia it is competent for the Congress of the United States to declare that the common law is to be regarded as in force, and even in the absence of express statutory enactment we should have to hold, in view of the circumstances, that the common law in its entirety, both in its civil and criminal branches, except in so far as it has been modified by statute or has been found repugnant to our conditions, is in force in the District of Columbia. But we are not left to implication in that regard.

At the time of the cession of the Territory of Columbia by the State of Maryland to the Federal Union, its law, as well as that of the rest of the States, was the common law of England, both civil and criminal, so far as that common law

was suited to our condition and was unaffected by statute. And with the common law the State of Maryland had adopted a considerable part of the statute law of England. When by the act of February 27, 1801 (2 Stat. 103), the Congress of the United States finally accepted the cession and assumed jurisdiction over the ceded District, it was specifically provided " that the laws of the State of Maryland, as they now (then) exist, shall be and continue in force in that part of the said District which was ceded by that State to the United States and by them accepted." This express enactment, if any such enactment was needed at all, was amply sufficient to continue in force and to perpetuate to the present day in the District of Columbia the common law of England as it existed in Maryland at that time, with all the existing statute legislation of the State and all the statute legislation of England that had been adopted by Maryland. And upon that theory of the law we have been conducting our affairs for nearly a hundred years. It is very true that much of the criminal branch of our common law has either become obsolete or has been obliterated by statutory enactment upon the same subject. Nevertheless, it is true that where it has not been repealed by express statutory provision, or modified by inconsistent legislation, or where it has not become obsolete or unsuited to our republican form of government, the common law of England in all its branches, both civil and criminal, remains to-day the law of the District of Columbia, and it has been repeatedly so held. See *United States* v. *Watkins,* 3 Cranch C. C. 441; *United States* v. *Marshall,* 6 Mackey, 34; *United States* v. *Hale,* 4 Cranch C. C. 83.

The case of *United States* v. *Eaton,* therefore, is not applicable to the District of Columbia, and was not intended to be applicable to it. And we are of opinion that it was not within the purview of that case to hold that there can be no common law offences against the United States in the District of Columbia.

D. C.]                         Syllabus.

As we have already stated, the present is the first appeal from the Police Court under the recent act of Congress. For that reason we have been more particular than was perhaps necessary in considering the questions sought to be raised by the record before us, inasmuch as the early rulings under the act must to a great extent determine the future practice thereunder.

We find no error in the rulings of the Police Court in this case; and the judgment of that court in the premises must therefore be *affirmed.    And it is so ordered.*