### COLLINS et al. v. UNITED STATES.

### No. 240.

Municipal Court of Appeals for the District of Columbia.

Jan. 29, 1945.

T. Emmett McKenzie, of Washington, D. C. (Denny Hughes, of Washington, D. C., on the brief), for appellants.

John J. O'Leary, Asst. U. S. Atty., of New York City (Edward M. Curran, U. S. Atty., and John P. Burke, Asst. U. S. Atty., both of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

The appellants, Shamigian as owner and Collins as night clerk of a small downtown hotel, were convicted on a charge of operating a disorderly house.[1] In appealing they have assigned several errors. These we will discuss not in the order in which they appear in the brief but in a sequence best contributing to brevity and continuity in this discussion.

1. *Refusal to Direct Verdict.*

The sufficiency of the evidence was challenged by motion for an instructed verdict. We therefore recite the substance of the evidence tending to establish guilt.

One of the police officers testified that some months before the arrest he had told both defendants that he had been picked up and checked into the hotel by a prostitute and had warned them to "clean up" the hotel.

Four people who lived close by testified that they had seen girls pick up men on the street and take them into the hotel, one girl going in as many as eight times in one evening, each time with a different man. One of these witnesses testified that he had complained of this situation to defendant Shamigian who had replied, "There is not anything I can do about it."

A sergeant of Military Police said he had entered the hotel with a companion and two prostitutes, and after discussing with defendant Collins the price of a room for the four of them, they had registered as man and wife and that the girls were then arrested by local police officers.

A woman who admitted being a prostitute testified that she had arranged with defendant Collins to work out of the hotel, and to pay $2 for the use of a room for

---

[1] Code 1940, § 22—2722.

fifteen or twenty minute periods and larger amounts for longer periods; and that she was usually assigned the same room.

Three police officers testified that during their observation of the hotel over a period of months they had seen known prostitutes enter and leave the hotel with men and that on several occasions a girl made repeated trips in and out of the hotel with different men; that many other couples entered the hotel without baggage and stayed only for short periods of time; that all such couples, including the prostitutes, stopped on their way in to talk with defendant Collins or to sign the register.

Naturally, we are not considering the weight or effect of defendants' denials: we examine the evidence only to test it for sufficiency. And we think it easily and plainly meets that test. "The trial court is not justified in directing a verdict where there is substantial evidence upon which the jury may base a conviction." Sleight v. United States, 65 App.D.C. 203, 82 F.2d 459, 460.

## 2. Refusal to Suppress or Exclude Evidence.

Appellants charge that the trial judge erroneously refused to suppress and later refused to exclude evidence as to what the officers saw when they raided the hotel. This was the situation: One Allen, a police officer detailed to the vice squad, had been investigating the hotel for several months. He recited his observations in an affidavit which formed the basis for a warrant of arrest of the two defendants. No search warrant was sought or obtained. One night shortly before midnight a large squad of police officers (estimated as high as sixty men) raided the hotel. Defendant Collins was immediately placed under arrest, and records in a desk were seized. The officers proceeded to make a room-to-room search of the hotel. They were permitted to testify that they saw numerous couples in various rooms, some undressed and some hastily dressing. This, appellants say, constituted an unreasonable search under the IVth Amendment and the evidence thus secured should have been suppressed on motion or excluded on objection. We think otherwise.

We need not of course repeat that a search may be made only under a valid search warrant or as an incident to a lawful arrest. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Marron v. United States, 275 U.S. 192, 48 S.Ct. 206, 72 L.Ed. 1016. Nor is there any question that even in connection with a valid arrest a search is unlawful if it is shown to have been merely "exploratory and general and made solely to find evidence of respondents' guilt." United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 423, 76 L.Ed. 877, 82 A.L.R. 775; Go-Bart Importing Company v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374. But when the search bears a reasonable relationship to the arrest, such as to find gambling equipment or other contraband, evidence secured during the search is admissible. Boyd v. United States, 116 U.S. 616, 6 S. Ct. 524, 29 L.Ed. 746; Marron v. United States, supra. In testing the reasonableness of the search all circumstances must be considered. Go-Bart Importing Company v. United States, supra. Here the police department had made a long, careful and thorough preliminary investigation which plainly indicated that the hotel was being used for disorderly purposes and that misdemeanors were being committed there continually. Those in charge of the arrest were therefore justified in organizing a raiding squad sufficiently large to make all necessary and proper arrests.

We agree that a large squad of policemen was not necessary to take two defendants into custody. But as we have already indicated the police were not required merely to arrest the defendants, consider their duty done and ignore misdemeanors being committed in various rooms throughout the hotel building. A similar situation was presented in Beard v. United States, 65 App.D.C. 231, 82 F.2d 837, 841, certiorari denied, 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382. There the police raided a gambling establishment. They did not find the person for whom the warrant had been issued, but arrested some 13 other persons. Holding the search and arrests proper the court said:

"The information the police had was sufficient to put them on notice the place was being used for gaming. This was enough to make the subsequent entrance and arrest lawful. *The arrests being lawful, it was equally lawful to search the place and to use the incriminating things found as evidence in the prosecution;* for 'when a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense

may be seized and held as evidence in the prosecution.' Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 287, 69 L.Ed. 543, 39 A.L.R. 790; and see, also, Marron v. United States, 275 U.S. 192, 198, 48 S.Ct. 74, 72 L.Ed. 231; where the court said, in a seizure under the National Prohibition Act, the authority of the officers to search and seize the things relating to or constituting the offense extends to all parts of the premises used for the unlawful purpose." (Emphasis supplied.)

In the case before us the officers were properly permitted to tell what they saw while making the search.

■ Also, we may note in passing that a hotel is a public place and search thereof is not so rigidly restricted as search of a private home. Smith v. United States, 70 App.D.C. 255, 105 F.2d 778; Ludwig v. United States, 7 Cir., 3 F.2d 231. We are satisfied that what was done in this connection and that what was related concerning it at the trial reveals no violation of the IVth Amendment.

### 3. The Instructions to the Jury.

■ Appellants criticize the judge's charge to the jury as "confusing and misleading and [was] so delivered as to be susceptible of different intendments."

We have studied the charge, which consumes some 18 pages of the record. It is not a model of clarity. It starts out by telling the jury that the evidence established and that defendant Shamigian admitted that the hotel was operated as a disorderly house. This statement was immediately challenged by counsel and corrected by the trial judge. The charge contains much that is confusing and some language seemingly self-contradictory in nature; but all the essentials to be charged in a case of this kind are there, and we cannot say that it is tainted with prejudicial error.

■ In any event, however, appellants offered no written instructions and voiced no objection when the charge had been completed. On the contrary, when the trial judge asked at the end of his charge "does counsel have anything further?" the response was "I think that is all; thank you." Thus, though counsel was given the opportunity to point out errors in the charge or to suggest additions or modifications therein, he did neither. This was not in keepng with our Rule 13 which while abolishing the requirement of formal exceptions, yet requires that a party make known to the court the action he desires taken or such objections as he may have. Therefore, in keeping with the decided cases we hold that the objection, being presented in this court for the first time, comes too late.[2]

### 4. Limiting Right to Cross-Examine a Government Witness.

In testifying for the Government, a police officer had stated that he needed to refer to his notes to refresh his recollection in order to answer certain specific questions. When the prosecutor asked him when he had made the notes the trial judge interrupted to ask, "What difference would it make?" Defense counsel protested that "it would make all the difference in the world." The judge then ruled that while counsel might cross-examine as to the time of making the notes, they might still be used for refreshing purposes whether made contemporaneously with the event or not. As the cross-examination proceeded it was punctuated by a series of interruptions, spontaneous rulings, and remarks by the judge, and by colloquies between court and counsel, all in the presence of the jury. When defense counsel insisted on his right to cross-examine on the notes the court responded that he might ask questions "which might tend to bring out anything or tend to refresh his recollection", but "you cannot cross-examine him as to the notes." Counsel thereupon attempted to establish that the witness might be mistaken or the notes be wrong in some instances, but the court interrupted to say, "I do not care whether a note is right or wrong * * *." When the witness attempted to explain an entry in the notes the court again interrupted thus, "You do not have to interpret your notes." A moment later the judge said he was permitting the cross-examination to show discrepancy between the notes and the witness' testimony, "but, the notes are not in evidence, and I have told the jury it does not make any difference if the

---

[2] Meyer v. Capital Transit Co., Mun. App.D.C., 32 A.2d 392; District Hauling & Construction Co. v. Argerakis, Mun.App.D.C., 34 A.2d 31; McDevitt v. Waple & James, Mun.App.D.C., 34 A.2d 39; Shapiro v. Vautier, Mun.App. D.C., 36 A.2d 349; Shay v. Randall H. Hagner, Mun.App.D.C., 38 A.2d 617; Morris v. Breaker, Mun.App.D.C., 38 A. 2d 632.

notes are different from the testimony * * *." Next, when defendants' counsel was asking about a change in the notes, the court interjected, "Just a moment, I do not think it makes any difference whether it was changed or not", and that it was not of the slightest importance when the entry was made. This remark was repeated and the court reiterated that the only question was whether it served to refresh witness' recollection. Counsel attempted to explain that the witness had made a mistake of an hour, but the court again interrupted with the remark that "the fact that he made a mistake and changed the notes is not material. He may have made a dozen mistakes." Taking up another part of the notes, counsel sought to have the witness explain a discrepancy. This the judge did not permit, saying, "There is no discrepancy", and that he might have his recollection refreshed even by inaccurate notes. Again, when counsel sought to have the witness point out certain blank spaces in his notes the court remarked, "I don't think it makes any difference", and finally said, "I wish you would go to some other line of testimony."

Though considerable time was consumed during the trial debating whether notes used for refreshing purposes must be made contemporaneously with the event testified to, the answer to that question is not necessary to our decision. Putnam v. United States, 162 U.S. 687, 16 S.Ct. 923, 40 L.Ed. 1118, held that the notes must have been made contemporaneously. But the later case of United States v. Socony-Vacuum Oil Company, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129, adopts a much more elastic formula. So does Fanelli v. United States Gypsum Company, 2 Cir., 141 F.2d 216, 217, which says, "Fortunately, the Putnam case, severely criticized by Wigmore, has recently had most of its teeth extracted" by the Socony-Vacuum case. We shall assume that the trial court was correct in ruling that the witness might use his notes to refresh his present recollection regardless of when they were made.

But that still leaves the question whether the right of cross-examination was improperly curtailed. The government argues that defense counsel was permitted to pursue his cross-examination of the witness; and the record does show a rather full series of questions. But it also shows that scarcely one of those questions remained unchallenged by the judge. Indeed it shows that at least ten times the judge made rulings or interjected remarks which could hardly have had any other influence on the jury than to chill the effect of the questions and minimize the value of the answers before they were given.

We must not confuse the question of the right of a witness to use notes to refresh his recollection with the right to cross-examine the witness concerning such notes. The time of making the notes, by whom they were made, the circumstances under which made, and their accuracy might not affect the right of a witness to refresh a present recollection; but all such elements have a bearing on the weight to be given to his testimony as so refreshed. And that can only be developed by cross-examination. This was clearly pointed out by the Supreme Court in United States v. Socony-Vacuum Oil Company, supra, in the following language [310 U.S. 150, 60 S.Ct. 849]:

"Normally, of course, the material so used must be shown to opposing counsel upon demand, if it is handed to the witness. (Citations.) And the reasons are that only in that way can opposing counsel avoid the risks of imposition on and improper communication with the witness, and 'detect circumstances not appearing on the surface' and 'expose all that detracts from the weight of testimony.' See 2 Wigmore, supra, p. 42."

Wigmore, at Section 762, referred to in the case just cited, says:

"On a general principle, that has in view the risk of imposition and false aids, against which the opponent is entitled to the means of protection, the writing must be shown to him on request. Furthermore, as by this opportunity of inspection the opponent is guarded against imposition clearly apparent, *so by cross-examination based on the paper he may further detect circumstances not appearing on the surface, and may expose all that detracts from the weight of testimony.*" (Emphasis supplied.)

He continues in Section 763:

"Nevertheless, though the witness' party may not present it as evidence, *the same reason of precaution which allows the opponent to examine it allows the opponent to call the jury's attention to its features,* and also allows the jurymen, if they please, to examine it for the same end." (Emphasis supplied.)

If counsel was to "detect circumstances not appearing on the surface" and "expose all that detracts from the weight of testimony" and "call the jury's attention to its features" there would seem to have been no other way of exercising that right except by cross-examining the witness with reference to the notes. And such questions on cross-examination were highly material, because directly bearing on the weight to be given to the testimony of the witness as refreshed by the notes. Clearly the jury might have given less weight to the testimony if it were shown that the notes were not made contemporaneously with the event but considerably later. Likewise, it seems to us highly important whether the notes were accurate or contained "a dozen mistakes", as the trial court suggested; and whether, if changes appeared in the notes, when and why they were made. Yet the trial court ruled that it did not make "the slightest difference" whether the notes had been changed or not and that it was not material whether a mistake had been made. Furthermore, as we have already indicated, when the defense sought to point out a discrepancy in the notes, the court made the flat statement that there was no discrepancy.

■ We are here confronted with something more grave than a chance remark or two, inadvertently dropped during the course of a long trial. Indeed the government concedes in its brief that "there was at times a certain amount of misapprehension by the court and counsel in this case as to the law and procedure" but argues that no rights of appellants were curtailed. If that were true we would "guard against the magnification on appeal of instances which were of little importance in their setting."[3] What we have here is a situation far more serious. It involves an erroneous concept of evidence, stated and several times reiterated in different language, and so expressed as to leave no doubt that it amounted to an invasion of the jury's province of weighing evidence. Stated more directly, it amounted to an unwarranted curtailment of the right of cross-examination.

■ Cross-examination is an absolute right and not a mere privilege.[4] It has come to be regarded as a vital feature of the law in providing the means of testing the value of human statements. "It is beyond any doubt the greatest legal engine ever invented for the discovery of truth."[5] And its importance was very recently emphasized by our own United States Court of Appeals as "the greatest safeguard of American trial procedure."[6]

If that right is to be preserved it must be zealously guarded in every trial. Just as it may not be withheld by direct ruling, so it may not be destroyed by the restrictive method of telling the jury that evidence sought to be elicited has no probative value.

Reversed with instructions to award a new trial.

[3] Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680.

[4] Mintz v. Premier Cab Ass'n, 75 U.S.App.D.C. 389, 127 F.2d 744 and Lindsey v. United States, 77 U.S.App.D.C. 1, 133 F.2d 368.

[5] Wigmore on Evidence, 3rd Ed., Vol. 5, P. 28, Sec. 1367.

[6] New York Life Ins. Co. v. Taylor, — U.S.App.D.C. —, 147 F.2d 297.