**Catherine J. BENNETT, alias Katherine or Peggy Bennett, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 2726.

Municipal Court of Appeals for the District of Columbia.

Submitted April 3, 1961.

Decided June 2, 1961.

H. Clifford Allder and Kenneth D. Wood, Washington, D. C., for appellant.

Oliver Gasch, U. S. Atty., Carl W. Belcher and William H. Collins, Jr., Asst. U. S. Attys., Washington, D. C., for appellee.

Before HOOD and QUINN, Associate Judges and CAYTON (Chief Judge, retired) sitting by designation under Code § 11–776(b).

QUINN, Associate Judge.

Appellant was convicted of keeping a disorderly house.[1] She asks this court to reverse her conviction upon two main grounds: (1) the court erred in finding probable cause for the issuance of an arrest warrant, and (2) the evidence failed to show that the premises involved were in fact being operated as a disorderly house. As recited upon stipulated facts, the police surveillance of appellant's rented apartment prior to her arrest produced the following chronology:

"On June 16, 1960 Officers Johns and Zoglio observed the apartment in question between the hours 9:30 A.M. and 4:30 P.M. During these hours, they observed 18 men enter the premises. On several occasions they observed the men to be admitted by a white female.

"On June 17, 1960 Officers Morris and Estrada observed the apartment in question between the hours 8:30 A.M. and 3:00 P.M. The first observations were made from outside the building. These were of three white females. One of these was Peggy Bennett. None of these women were seen to leave the building. Also observed going to the apartment in question this day during the hours of observation were twenty men.

"On June 18, 1960 Officers Johns and Zoglio observed the apartment in question from 9:30 to 5:30 P.M. They observed Peggy Bennett enter the building in question and not leave. They also observed twenty-four men enter the apartment in question. They also observed a white female enter the apartment and not to leave.

1. Code 1951, § 22–2722.

"On June 20, 1960 Officers Morris and Estrada observed the premises in question from 9:00 A.M. to 6:30 P.M. During this time they observed twenty-two men enter the apartment in question. They also observed Peggy Bennett arrive at the apartment in question at 10:08 A.M. and not leave until 6:10 P.M. She was seen entering and leaving the specific apartment door in question. Also three white females were seen entering the apartment and only one of these was seen to leave. On this day, at 6:05 P.M. Peggy Bennett was seen and overheard in answering the apartment door. An oriental male went to the door at 6:05 P.M. Peggy Bennett told him that they were closed for the day and that he could come back any other day except Sunday between 10:00 A.M. and 6:00 P.M.

"On June 21, 1960 Officers Morris and Zoglio observed the apartment from 9:00 A.M. to 12:00 noon. During this time they observed Peggy Bennett enter the apartment at 9:25 A.M. She was not observed to leave it. They also observed five men enter the apartment during the time they observed.

"The investigation of the premises and apartment in question was conducted for 34 hours on five days. During this period, a grand total of 89 men were observed to enter the premises. They all stayed for an average of 20 to 30 minutes or long enough to participate in a sexual act.

"On June 22, 1960 a Municipal Court Arrest Warrant No. 1373–60 was issued for the arrest of Catherine Bennett a. k. a. Peggy Bennett. * * *"

The application for the warrant was prefaced by the following statement:

"Investigation by members of the Prostitution Sqd. of the Morals Division revealed that a disorderly house was being operated at premises 1322 14th St. N.W. #3. It was further learned that the madam of this operation was Peggy Bennett who also uses the names Catherine and Katherine. She is a convicted madam and vagrant. * * *"

■ This parade of males into appellant's apartment and her past criminal record as a convicted madam and vagrant certainly provided adequate justification for the issuance of the warrant. If any doubt existed concerning the nature of the activity within the apartment, it was convincingly dispelled by the following:

"On Wednesday, June 22, 1960, Detective Charles Rinaldi went to the apartment in question. He had the arrest warrant in his possession. This was at 12:45 P.M. Defendant Bennett answered the door. At this time Rinaldi told her that he had a warrant and that she was under arrest. At this time defendant Bennett attempted to shut the door. Rinaldi pushed his way through. Defendant Bennett immediately started to shout, 'Girls, girls, it's the police.' Immediately Officers Morris, Johns, Zoglio and Estrada came on the scene. They went back to the bedrooms. In one bedroom they observed one prostitute, Debbie Montaine completely nude with a white male who was stripped to the waist. In another room they found another prostitute, Patricia Brenner, wearing only panties, with a white male who was observed putting on his pants."

■ The contention that appellant's conviction was unsupported by the evidence need not detain us long. From the evidence and the proper inferences to be drawn therefrom the trial judge could fairly have been convinced beyond a reasonable doubt of appellant's guilt, and his findings are not to be set aside unless clearly erroneous. The evidence was clearly ample to sustain the conviction.

Affirmed.