James J. KILLEEN and William H. Fentress,
Appellants,

v.

UNITED STATES,
Appellee.

James J. KILLEEN, Appellant,

v.

DISTRICT OF COLUMBIA,
Appellee.

William H. FENTRESS, Appellant,

v.

DISTRICT OF COLUMBIA,
Appellee.

Nos. 3949–3951.

District of Columbia Court of Appeals.

Argued Oct. 3, 1966.

Decided Nov. 28, 1966.

Denis K. Lane, Washington, D. C., for appellants.

Charles A. Mays, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee in No. 3949.

John R. Hess, Asst. Corp. Counsel, with whom Milton D. Korman, Acting Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee in Nos. 3950 and 3951.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

Appellants, the president and the treasurer of a corporation operating a local restaurant, were convicted of keeping a disorderly house [1] and vagrancy.[2] The former charge was tried before a jury; the latter submitted to the court. On appeal, they contend that the trial court erred (1) in failing to grant a motion for a verdict of not guilty, (2) in certain of its charges to the jury, and (3) in the admission of certain evidence. Since the vagrancy conviction must necessarily stand or fall with that of keeping a disorderly house, only the latter will be discussed.

The government's principal witness was Officer Graham of the Prostitution and Perversion Squad of the Morals Division, Metropolitan Police Department, who had visited the restaurant ten times in an undercover capacity. He stated that while on the premises he observed some of appellants' employees (waitresses, a piano player, and a femal impersonator) engaging in homosexual activities with customers. He also testified to witnessing homosexual conduct on the part of both male and female customers and to seeing numerous transvestites, some of whom were engaged in other homosexual acts.[3] All of these acts were committed openly, and although appellants and other "managers" were on the premises and in a position to observe this improper conduct, they at no time made any attempt to suppress it. He further testified that after leaving the restaurant each evening, he made a written report of his observations. These re-

---

1. D.C.Code § 22–2722 (Supp. V 1966) provides: "Whoever is convicted of * * * keeping a bawdy or disorderly house in the District shall be fined not more than $500 or imprisoned not more than one year, or both."

2. D.C.Code § 22–3302 (1961) provides: "The following classes of persons shall be deemed vagrants in the District of Co-

lumbia: (4) Any person who keeps, operates, frequents, lives in, or is employed in any house or other establishment of ill fame * * *."

3. It would serve no useful purpose to set out in detail the homosexual activities and conduct that took place in this establishment.

ports were subsequently admitted into evidence over appellants' objections. Officer Graham's testimony was supported in part by that of another officer who accompanied him on five of his ten visits.

·Lieutenant Fochett, who had authorized the investigation of the restaurant, testified that he had had a conversation with appellant Killeen at the time of his arrest. At that time Killeen told him that appellants did allow men to dance with men and women with women at the premises. Fochett further recounted an earlier conversation during which Killeen said he was aware that local businessmen were unhappy with the type of clientele he had in his restaurant.

Appellants took the stand and stated that although they were on the premises almost every night during the period of observation, they did not witness any improper conduct, nor was any brought to their attention by employees, customers, or members of the police department. They also introduced evidence tending to show that the construction of the premises prevented anyone from having a clear view of the entire restaurant and bar at one time, and presented other witnesses who testified to their good character.

■ Appellants' first argument is that the government failed to prove a prima facie case since it did not show that they had knowledge of the improper conduct of the patrons and employees of the restaurant. In order to prove the crime charged, the government had to establish that the acts done at the premises were contrary to law and subversive of the public morals, that the premises were commonly resorted to for the commission of such acts, and that the proprietors knew or should in reason have known what was occurring and did nothing to prevent it. DeForest v. United States, 11 App.D.C. 458, 463 (1897); Payne v. United States, D.C.Mun.App., 171 A.2d 509, 511 (1961). It was therefore not necessary to prove actual knowledge if it could be shown that appellants should in

reason have known what was happening. In addition, the requisite knowledge could have been proved inferentially since a proprietor is presumed to have knowledge of that which goes on in his premises. DeForest v. United States, supra, 11 App.D.C. at 464. After reviewing the record, we are convinced that there was sufficient evidence from which the jury could have found or inferred that appellants had or should in reason have had the requisite knowledge.

■ Appellants next argue that the trial court's instruction to the jury regarding the element of knowledge was erroneous. The court stated:

"So you must find in this case that the premises * * * was commonly resorted to for the commission of such acts and practices as I have just described to you that would be unlawful and that the keepers knew or should have known about this and did nothing to prevent the commission of such acts.

"You are further instructed that every person is presumed to have knowledge of what goes on in his own house or establishment or premises.

"However, this presumption is not conclusive—it is a presumption but it is not conclusive and it may be overcome by evidence to the contrary.

"Of course, here the Defendants admit they had possession and control of the premises involved or were the proprietors thereof. Therefore, you may infer they had knowledge of what was going on in such premises unless evidence to the contrary has satisfied you that they did not have knowledge of such acts or practices.

"Now, if you find beyond a reasonable doubt that the Defendants were keepers of the restaurant and Lounge which was commonly resorted to by persons who therein committed unlawful and immoral acts, such as I have describ-

ed to you would be considered unlawful, then you must find them guilty, if they knew or should have known of these acts or practices and did nothing to prevent them although they were able to prevent them."

This instruction is merely a restatement of the law established in DeForest v. United States and Payne v. United States, supra, and we find no error in this regard. Accord, State v. Western Union Tel. Co., 12 N.J. 468, 97 A.2d 480, 491, appeal dismissed, 346 U.S. 869, 74 S.Ct. 124, 98 L.Ed. 379 (1953).

▆▆▆ In another part of his instructions, the trial judge charged:

"I must say that in this connection evidence of good character can be considered by you in determining the credibility of witnesses. As a matter of fact and as a matter of law, evidence of good character, standing by itself, and alone, is enough and may create a reasonable doubt."

Appellants claim this was erroneous. In the light of Michelson v. United States, 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948), and Villaroman v. United States, 87 U.S.App.D.C. 240, 242, 184 F.2d 261, 263, 21 A.L.R.2d 1074 (1950), we hold that this instruction was a proper statement of the law. In addition, appellants neither offered an instruction on this point nor objected to the instruction as given, and they will not be allowed to raise an objection to it for the first time on appeal. Villaroman v. United States, supra at 241, 184 F.2d 262; Collins v. United States, D.C.Mun.App., 41 A.2d 515, 518 (1945).

▆▆▆ Finally, appellants contend that the trial court erred in admitting into evidence the reports written by Officer Graham. For many years there has been confusion and debate concerning the use of "recollection evidence." It now appears to be the accepted view that writings representing a "past recollection recorded" are admissible as evidence, whereas those rep-

resenting "present recollection revived" are inadmissible. United States v. Riccardi, 174 F.2d 883 (3d Cir.), cert. denied 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949); Shokuwan Shimabukuro v. Higeyoshi Nagayama, 78 U.S.App.D.C. 271, 140 F.2d 13, cert. denied, 322 U.S. 755, 64 S.Ct. 1270, 88 L.Ed. 1584 (1944); McWilliams v. Lewis, 75 U.S.App.D.C. 153, 125 F.2d 200 (1941); Sechrist v. Atkinson, 31 App.D.C. 1 (1908); Cohen v. Berry, D.C.App., 188 A.2d 302 (1963); Belcher v. Jenkins Engineering Co., D.C.Mun.App., 123 A.2d 215 (1956); Shea v. Fridley, D.C.Mun.App., 123 A.2d 358, 362 (1956); Berry v. Keith, D.C.Mun.App., 100 A.2d 831 (1953); Fowler v. Stanford, D.C.Mun.App., 89 A.2d 885 (1952); cf. State v. Brooks, 136 N.J.L. 577, 57 A.2d 34, 37 (Ct.Err.&.App. 1948). See generally 3 Wigmore §§ 734–765 (3d ed. 1940); Annot. 82 A.L.R.2d 473 (1962); Annot. 125 A.L.R. 19 (1940). This is so because in the former case, the witness in effect says, "Even after looking at these notes, I do not remember the occurrence, but I know the notes were true and accurate when made," and therefore when the notes are introduced into evidence, they speak for the witness. In the latter case, the witness' memory is refreshed and he is able to testify from a present recollection of the events. His testimony speaks for itself and there is no need to have the notes in evidence.

▆▆▆ The case at bar presents a hybrid situation. Officer Graham testified that the reports were made shortly after the events occurred and that they were true and accurate accounts of his observations. He repeatedly stated that he could not recall certain information such as which dates and names were mentioned in specific reports, but during his lengthy testimony he substantially iterated the contents of his reports. The record is not clear as to when he first used the notes to aid his testimony although it does show they were used extensively during his cross-examination. They were admitted into evidence as past recollections recorded.

We believe that even if it was error to admit the reports into evidence, such error was harmless. Officer Graham had testified fully as to their contents, and no prejudice has been shown in the fact that these reports may have gone to the jury. Accord, McCarthy v. Boston & M. R. R., 92 N.H. 149, 27 A.2d 97 (1942); Chmiel v. Yatsko, 124 N.J.L. 508, 13 A.2d 219 (1940); 98 C.J.S. Witnesses § 363 (1957). We are not convinced, however, that the trial judge did err since he was in a position to see clearly the use given these reports by the witness. We agree with him that the distinction drawn between the two aforementioned classes of evidence is a technical one, and, in a close case, we are inclined to follow the rule that admissibility is a matter within the sound discretion of the trial judge. United States v. Riccardi, supra. See Wigmore, supra §§ 755, 765; Cohen v. Berry, supra; Fowler v. Stanford, supra.

The conviction for keeping a disorderly house is therefore affirmed, and since the conviction for vagrancy is so closely related thereto, it also is affirmed.

Affirmed.