**David Gary HARRIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6172.**

District of Columbia Court of Appeals.

Argued April 19, 1972.

Decided Aug. 10, 1972.

James H. Wallace, Jr., Washington, D. C., with whom Paul M. Hyman, Washington, D. C., was on the brief, for appellant. Robert A. W. Boraks, Washington, D. C., American Civil Liberties Union Fund, was also on the brief for appellant.

Harry J. McCarthy, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John F. Finnegan, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, NEBEKER and REILLY, Associate Judges.

NEBEKER, Associate Judge.

This appeal from a conviction for "keep[ing] a bawdy or disorderly house * * *, a premises resorted to for homosexual activities",[1] presents a constitutional attack of vagueness on the disorderly house part of the statute as defined by court decision.[2] Also, the sufficiency of the evidence is challenged on the ground that no evidence was adduced on the question whether the homosexual conduct described was "subversive of the public morals"—a part of the common-law definition of the disorderly house offense as recognized in Payne v. United States, D.C.Mun.App., 171 A.2d 509, 511 (1961). This point is described by appellant as "related [to the] area of obscenity" where proof of contemporary community standards is sometimes required. *See* Roth v. United States, 354 U. S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Hudson v. United States, D.C. App., 234 A.2d 903 (1967). We take a different view of the case from that of the parties and affirm the conviction.

We are asked to hold that this court's definition of a disorderly house is constitutionally overbroad because it "affords an almost boundless area for individual assessment of the morality of another's behavior." Ricks v. District of Columbia, 134 U.S.App.D.C. 201, 210, 414 F.2d 1097, 1106 (1968). In Payne v. United States, *supra* 171 A.2d at 511, this court said of the common-law definition of a disorderly house, "[W]e believe it is accurate to say that 'a disorderly house is one where acts are performed which tend to corrupt the morals of the community or to promote breaches of the peace.'"[3] (Footnote omitted.) If we were, as assumed by the parties, to be confronted with a disorderly house prosecution it might be necessary to decide whether the recognized definition in Payne v. United States, *supra,* was the exclusive one

---

1. D.C.Code 1967, § 22–2722. The latter phrase respecting homosexual activity was added to the information, as an amendment, before trial.

2. De Forest v. United States, 11 App.D.C. 458 (1897); Payne v. United States, D.C.Mun.App., 171 A.2d 509 (1961).

3. In that case we also relied on language from De Forest v. United States, 11 App. D.C. 458, 463 (1897) which, in reference to a house of heterosexual prostitution, acknowledged the common-law offense of keeping a bawdy house. It is important to keep in mind that *De Forest* predated by about thirteen years a decision in this jurisdiction holding that keeping a common-law disorderly house was a felony. Palmer v. Lenovitz, 35 App.D.C. 303 (1910). It was then in 1912 that the provision which is now D.C.Code 1967, § 22–2722 was enacted to make keeping a bawdy house or disorderly house a misdemeanor.

or whether this "very broad" (*id.* at 511) offense[4] might also include conduct not calling for reference to a community sense of values or "morals". We hold the instant conviction to be one for keeping a bawdy house as distinguished from a disorderly house. Since a bawdy house was at common law a nuisance per se,[5] and is by statute now declared a nuisance,[6] we need not address the question of public values and of course find it unnecessary to reach the constitutional issue so eagerly pressed upon us. It is worthy of note, however, that the term "moral" as similarly used in a judicial opinion—as distinguished from a legislative proscription—has been unanimously accepted as a usable standard in the area of criminal responsibility. United States v. Brawner, —— U.S.App.D.C. ——, (No. 22,714, decided en banc June 23, 1972). Perhaps the same may be said of the reference to "public morals" in *De Forest* and *Payne*,—i. e., "The 'moral' elements of the decision are not defined exclusively by religious considerations but by the totality of underlying conceptions of ethics and justice shared by the community, as expressed by its jury surrogate." United States v. Brawner, *supra,* slip op. at 22–23. *See also* Roth v. United States, *supra,* 354 U.S. at 489, 77 S.Ct. 1304.

■ A correct analysis of the nature of this prosecution requires an understanding of more than D.C.Code 1967, § 22–2722, the bawdy and disorderly house provision. That section is part of Chapter 27, Title 22 of the D.C.Code. A reading of the first section of Chapter 27, § 22–2701[7] reveals an absence of any reference to a female in the proscription of inviting "any person or persons sixteen years of age or over" for the purpose of prostitution. Indeed, this section applies to solicitation for homosexual acts. *See* Berneau v. United States, D.C.App., 188 A.2d 301 (1963); and Alexander v. United States, D.C.App., 187 A.2d 901 (1963). Sections 22–2704 through 22–2712 then make specific references to acts related to prostitution in which females are the prime target.

It is then very significant that the remaining sections of Chapter 27 return to a legislative prohibition of conduct and procedure not necessarily involving women. Section 22–2713 declares as a nuisance, and for its injunction and abatement, any place used for the purpose of "lewdness, assignation, or prostitution". Procedures are then set forth in §§ 22–2714 through 22–2720 for effecting the injunction and abatement. Finally, § 22–2722 proscribes "keeping a bawdy or disorderly house".

■ From this we are compelled to conclude that the statutory scheme of Chapter 27 covers more than heterosexual prostitution, and that references therein to a bawdy house, in order to have any meaning at all, must be viewed as relating at least to homosexual prostitution. This statute has been applied to homosexual activity without charge. *See* Killeen v. United States, D.C.App., 224 A.2d 302 (1966). We are fortified in this conclusion by case law of other jurisdictions which also recognize that prostitution is not limited to heterosexual conduct but also includes homosexual acts. *See* People v. Lackaye, 348 Ill.App. 542, 109 N.E.2d 390 (1952) aff'd, 1 Ill.2d 618, 116 N.E.2d 359 (1954); and

---

4. United States v. Laffal, D.C.Mun.App., 83 A.2d 871 (1951).

5. 3 W. Burdick, Law of Crime § 910 (1946):
   ". . . houses of prostitution, known also as bawdy houses, brothels, and houses of ill fame are nuisances *per se.*"

6. D.C.Code 1967, § 22–2713.

7. D.C.Code 1967, § 22–2701 provides:
   "It shall not be lawful for any person to invite, entice, persuade, or to address for the purpose of inviting, enticing, or persuading, any person or persons sixteen years of age or over in the District of Columbia, for the purpose of prostitution, or any other immoral or lewd purpose, under a penalty of not more than $250 or imprisonment for not more than ninety days, or both."

Commonwealth v. Porter, 237 Mass. 1, 129 N.E. 298 (1921). As has been observed, houses of prostitution are bawdy houses. *See* footnote 3, *supra*. We, therefore, hold that while Congress has given special treatment to the running of a house of prostitution with respect to females (§ 22–2712), it has left to the bawdy house provision the proscription of keeping a house for homosexual prostitution among males. This conclusion is not incumbered by the fact that previous cases have referred to the offense as it is popularly known—"keeping a disorderly house".[8] In none of those cases did the issues presented require an analysis of the difference between a bawdy and a disorderly house. Therefore, references in each to a disorderly house cannot be construed as saddling with that label what at common law was a bawdy house.

■ An essential element of prostitution is money or material gain in exchange for illicit sexual activity. Boykin v. United States, 76 U.S.App.D.C. 147, 130 F.2d 416 (1942); Wajer v. United States, D.C.App., 222 A.2d 68 (1966); Golden v. United States, D.C.Mun.App., 167 A.2d 796 (1961); Price v. United States, D.C.Mun. App., 135 A.2d 854 (1957); Sellers v. United States, D.C.Mun.App., 131 A.2d 300 (1957); Hawkins v. United States, D.C. Mun.App., 105 A.2d 250 (1954). Cf. Walker v. United States, D.C.App., 248 A. 2d 187 (1968). The evidence in the instant case clearly shows that appellant was the operator of the house used by males, after payment of an initial membership fee plus a fee for each visit, for a variety of homosexual activities including sodomy. *See*

D.C.Code 1967, § 22–3502. The record, therefore, reveals a conviction based on keeping a house where as a matter of course objective acts of homosexual conduct, prohibited in and of themselves by our sodomy statute, are committed. With proof of the element of profit, that house became a bawdy house or house of prostitution. The term prostitution is "free of ambiguity and * * * lays down a definite and easily understandable standard of criminal liability." Hawkins v. United States, *supra* at 252 of 105 A.2d. There is, therefore, no question presented on the facts of this case calling to issue an "assessment of the morality of another's behavior." Ricks v. District of Columbia, *supra*.

■ It is also necessary to decide whether reversal is required because the jury was instructed only on the theory that what was charged was keeping a disorderly house as defined in Payne v. United States, *supra*.[9] It is the conclusion of the court that this error was harmless. *See* D.C.Code 1967, § 11–721(e) (Supp. V, 1972). The verdict under the disorderly house theory necessarily included a finding beyond a reasonable doubt that appellant operated, for profit or gain,[10] a house for the purpose of homosexual activity by the members and that such activity was a matter of course therein. Therefore, the essential facts to sustain a bawdy house conviction were proved under the erroneous, but harmless, theory that they established a disorderly house violation. Likewise, the instruction respecting public morals interjected an irrelevant, superfluous and harmless subject for jury consideration and may be disregarded under the circumstances

---

8. Killeen v. United States, D.C.App., 224 A.2d 302 (1966); Wood v. United States, D.C.Mun.App., 183 A.2d 563 (1962); Bennett v. United States, D.C.Mun.App., 171 A.2d 252 (1961); Packard v. United States, D.C.Mun.App., 77 A.2d 19 (1950); Collins v. United States, D.C.Mun.App., 41 A.2d 515 (1945); Darnall v. United States, D.C.Mun.App., 33 A.2d 734 (1943).

9. The instruction was in the language of Payne v. United States, *supra* note 2: "It is sufficient that the actions that were done there are contrary to law and subversive to public morals."

10. Appellant's counsel conceded to the jury at closing argument when he discussed "the issue of money": "How can Mr. Harris run any business at a loss? Obviously he has to charge money."

presented here. Greene v. United States, 114 U.S.App.D.C. 266, 267 n. 1, 314 F.2d 271, 272 n. 1 (1963). If anything, the instruction harmed the prosecution for it added yet another obstacle to be overcome for conviction.[11]

■ Appellant also argues that application of this statute to a situation revealing homosexual acts between consenting adults amounts to an overbroad encroachment upon constitutionally privileged conduct. It is the view of this court that the law does not permit such result. In reaching this conclusion we follow the holding of the United States Court of Appeals for the District of Columbia Circuit in Velez-Lozano v. Immigration and Naturalization Service, —— U.S.App.D.C. ——, 463 F.2d 1305 (decided June 7, 1972), where it said:

> "Despite petitioner's lengthy argument that consensual sodomy is not a crime involving moral turpitude we are unable to agree with him. Sodomy is a crime of moral turpitude in Virginia, Code of Virginia, § 18.1–212, and is still considered a felony in the District of Columbia, 22 D.C.Code 3502. Similarly, the Board [of Immigration Appeals] has held the crime of solicitation to commit sodomy was a crime involving moral turpitude as early as 1949. In the Matter of K——, 3 I & N Dec. 575 (BIA 1949). The argument advanced by petitioner that the Virginia sodomy statute is unconstitutional is also without merit. *See* Towler v. Peyton, 303 F.Supp. 581 (W. D.Va.1969)."

*Id.,* at 1307. The judgment of the trial court is

Affirmed.

KERN, Associate Judge (concurring):

I agree that the judgment of conviction should be affirmed but my approach to this case differs somewhat from that taken by the majority.

Appellant attacks his conviction for "keeping a bawdy or disorderly house" in violation of D.C.Code 1967, § 22–2722 upon the grounds that the statute (1) is void for vagueness under the fifth amendment and (2) "is unconstitutionally overbroad in its vague encroachments upon constitutionally privileged conduct." (Br. at 17.) In support of the latter contention appellant cites Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), but those decisions are inapposite to the instant case. Here, we are dealing not with the relationship between husband and wife in the home or the individual's possession and use, privately, of certain material, but rather the maintenance by appellant of a place where homosexual gratification might be obtained by anyone who could afford to buy it. The mere fact that adults were the participants in his emporium of pleasure and that their activities were behind closed doors does not transmogrify his operation from a public nuisance into privileged conduct which Congress cannot constitutionally proscribe.[1]

As to appellant's contention that the language of the statute is "so vague and standardless that a person of common understanding would be uncertain as to what conduct it proscribes," (Br. at 10), the evidence showed that appellant maintained a

---

11. Our disposition also makes it unnecessary to treat the question respecting necessity of proof to establish the level of public morals.

1. The purported policy recently announced by a representative of the District of Columbia government not to prosecute private consensual homosexual acts between adults, see 11 Crim.L.Rep. 2252 (June 21, 1972), pertains only to conduct in the privacy of the home. The United States Attorney does not, however, join in that policy pronouncement.

house where homosexual activity, was carried on in exchange for money or material gain. In essence, appellant was operating a house of prostitution and I do not doubt that such an operation is commonly known and understood to be the keeping of a bawdy or disorderly house. Under these circumstances, the vagueness doctrine is not applicable. *See* Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (decided June 12, 1972).

Appellant's most serious challenge is to point to our decision in Payne v. United States, D.C.Mun.App., 171 A.2d 509 (1961) and the 1897 decision in De Forest v. United States, 11 App.D.C. 458, and urge that they have imparted a gloss to the statute in question: That an element of the crime of keeping a bawdy or disorderly house is that such conduct must be "subversive to public morals" and that the prosecution must prove this beyond a reasonable doubt. What is "subversive to public morals" is in the abstract difficult to define and was in this case, as the prosecutor conceded, not proven. In my view, however, Congress has already determined that keeping a bawdy or disorderly house, *when it is a house of prostitution,* is contrary to the public interest. Therefore, in "a house of prostitution" case,[2] I do not consider it necessary for the prosecution to prove that keeping a bawdy or disorderly house subverts public morals and I am of opinion that the trial court should avoid in the future so instructing the jury. In the instant case, the trial court's instruction was superfluous but harmless. Accordingly, I would affirm.

2. As I read De Forest v. United States, 11 App.D.C. 458 (1897), the court recognized (at 462–463) that Congress had outlawed the keeping of a bawdy or disorderly house, when it was a house of prostitution, because it constituted a public nuisance and in effect subverted public morals, even though "the business is [not] conducted openly and notoriously" (at 463). In Payne v. United States, D.C.Mun.App., 171 A.2d 509 (1961), we were applying the bawdy/disorderly house statute to an operation other than a house of prostitution and, thus, I do not believe that case is applicable here.