THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JAMES BROOKS, PLAINTIFF IN ERROR.

Argued October 21, 1947—Decided January 29, 1948.

For the plaintiff in error, *Gerald T. Foley* and *Joseph A. Hayden*.

For the defendant in error, *Duane E. Minard,* Prosecutor of the Pleas, *Richard J. Congleton* and *C. William Caruso,* Assistant Prosecutors of the Pleas.

The opinion of the court was delivered by

OLIPHANT, CHANCELLOR.   The plaintiff in error, James Brooks, hereinafter called the defendant, was indicted in the Court of Oyer and Terminer of Essex County for the murder of Mortimer Bateman.   He was convicted of murder in the first degree, and no recommendation of life imprisonment being made by the jury, he was sentenced to death.   He now brings up for review that judgment under the provisions of both *R. S.* 2:195–A–1 and *R. S.* 2:195–16.

Defendant and one Smart, who was a fellow employee of Bateman, conceived and carried into execution a plan to hold up a truck driven by Bateman and rob him of moneys which he was on his way to a bank to deposit for his employer. Bateman was shot by a gun in the hands of the defendant. Smart, after his arrest, committed suicide.

The indictment charged the murder was committed in the City of Newark, County of Essex.

The defendant did not take the witness stand and no proof was offered that he did not participate in the armed robbery in the course of which Bateman was shot and killed. The state's case consisted of proof of the *corpus delicti* by the chief medical examiner of Essex County, a confession of the defendant, and the testimony of three eye witnesses of the early stage of the hold-up.

At the trial the evidence showed that a witness Bomwell was standing at the corner of Wickliffe Street and Thirteenth Avenue, in Newark, when he heard a sound like the backfire of an automobile and what sounded like men fighting inside of a truck. His observation disclosed a parked truck in the center of a street without a driver. He then saw a man, with gloves on, appear from inside the truck and take over the wheel. The truck started, and the witness heard one or two shots fired and saw "a puff of smoke as each bullet went off." Two other witnesses heard at least three reports which they at the time thought were backfires from automobiles.

There was ballistic proof that one of the bullets taken from the body of Bateman had been fired from a revolver owned by and found in defendant's home. The medical examiner testified there were three bullet wounds of which the one in the abdomen had proven fatal.

The defendant, in his confession, gave a full account of what had happened and these are the important details. Smart stopped the truck driven by Bateman, who let him in, and then the defendant jumped in. After they rode a short distance defendant pulled the gun and said "This is a hold-up —I am not kidding." It was part of the plan to pretend Brooks did not know Smart. Then Bateman grabbed the gun; it went off, and Bateman and defendant fell back in the truck. Two more shots were fired quickly. They then beat Bateman and Smart took the gun and fired two shots into decedent at close range. In all, defendant shot at the deceased three times, Smart twice. The first shot was fired while the truck was at a stand-still, the other while it was

moving. Bateman was pleading not to be left to die. Smart wanted him shot again but there were no more live shells in the gun. The truck all this time was being driven through Newark and to the Vaux Hall section of Union Township, Union County. Deceased was found in Waldorf Place, Vaux Hall, alive. He was taken by Union Township police to a doctor's office, then to the Elizabeth Hospital, where he died.

There was no direct positive evidence as to all five shots being fired in Essex County, and the main argument on behalf of the defendant is, that being so, the court erred in failing to direct a verdict in favor of the defendant.

It is argued that the extent of the testimony of two of the witnesses was that they heard reports which sounded like automobile backfire, and that while the witness Bomwell said he heard shots and saw gun smoke, none of these connected Brooks, the defendant, with what they saw or heard. It is then said that defendant's confession is utterly silent as to where the truck was when any but the first shot was fired.

It is true, as claimed, that the venue having been laid in the County of Essex, the state was under a duty to prove that one or more shots from which Bateman died were inflicted in that county, but this does not mean it must be proven by direct, not circumstantial evidence. The fact that Bateman died in Union County is immaterial, for it is provided in *R. S.* 2:184-2 that whenever a person shall be feloniously stricken in one county and he shall die by reason thereof in another county, an indictment may be found in either county. In *State* v. *Hauptmann*, 115 *N. J. L.* 412, the evidence was circumstantial as to where the felonious striking had occurred. The venue was laid in Hunterdon while the body of the child was found in Mercer County. With respect to the felonious stroke being inflicted in Hunterdon County, this court said:

"* * * Clearly the jury were entitled in view of the evidence to find that some sort of battery was committed in Hunterdon when the child was taken from its bed; and from that evidence might also find that the blows on the head, causing death, were inflicted in Hunterdon. It was not necessary to show death in Hunterdon; proof of a felonious strik-

ing in that county, causing death wherever that occurred, was sufficient; and we consider that of such striking there was sufficient proof, *even though of a circumstantial character."* (Italics ours.)

That statement of the law applies with equal force to the instant case. From all the evidence, including the various positions of the men in the truck, the fact that Bateman was wounded three times, that Smart was driving the truck for the full length of the journey following the first shot, and the testimony of the witnesses, one of whom heard shots and saw smoke, others who heard what they thought was backfire from an automobile, the jury could properly have inferred that all five shots were fired and that the deceased had suffered his mortal wound by a shot fired in Essex County.

The court charged, "If, after a consideration of the evidence, there remains in your minds a reasonable doubt that the fatal shot or shots were fired in the City of Newark, I charge you that your verdict must be not guilty." This instruction together with other pertinent portions of the charge gave to defendant the benefit of all he was legally entitled to on this point.

We shall notice the remaining points made by the defendant in the order in which they have been argued.

The first relates to alleged error by the trial court in charging the jury that from the failure of the defendant to testify as to where the fatal shot was fired, the jury might be justified in drawing against him unfavorable conclusions.

We perceive no error in this respect. It is argued there was no testimony that more than three shots were fired. This is only partially true. The testimony of the witnesses varied from two to four as to the number of reports. But the confession states that all five bullets in the gun had been exploded when defendant "opened the gun and the shells fell on the floor." Defendant was on the driver's seat of the truck when this was done and could have rebutted the inference that they were still in Newark when this occurred. Concededly all shots had been fired at some time prior to this happening.

Despite the contention that there was no direct proof as to where the shots were fired, there was direct proof connect-

ing defendant with the crime. If there is an exception to the rule respecting comment by the court on the failure of an accused to offer himself as a witness as laid down in *Parker* v. *State,* 61 *N. J. L.* 308 and *State* v. *Callahan,* 71 *Id.* 685, it is only where there is a total lack of evidence connecting the defendant with the crime, as indicated in *State* v. *Wines,* 65 *Id.* 31, not the lack of proof of only a single element of the crime charged in the indictment or where the defendant could meet and rebut the proof offered by the state, of which he had knowledge and which he could disprove by his own oath as a witness. *State* v. *Lennon,* 107 *Id.* 94.

It is next contended the court erred in admitting in evidence a statement made to the police by the witness Bomwell. This was developed on cross-examination. He had used the statement before the trial to refresh his recollection as to the date of the murder, and the defendant called upon the state to produce it. This was refused. The court ordered it turned over to defense counsel, and it was marked for identification. Bomwell was later recalled to the stand for further cross-examination, and defense counsel used the statement in an endeavor to contradict the witness as to testimony given by him on direct examination. During the cross-examination the witness was not asked questions concerning the date of the crime, which was the only part of the statement used to refresh his recollection. It was later admitted into evidence.

Where on demand a prior statement made by a witness is produced and is inspected by the other side and used in aid of cross-examination, it becomes evidence for both parties and may be offered in evidence by either. *Ellison* v. *Cruser,* 40 *N. J. L.* 444; *Decker* v. *Smith & Co.,* 88 *Id.* 630. The order of the court to produce after demand had the same effect as a notice to produce or a subpœna. The case of *Springer* v. *Labow,* 108 *Id.* 68, is clearly not in point on the facts.

There is no merit whatever in the final point that the verdict was contrary to the weight of the evidence in respect to the confession of the defendant being voluntary and that the state failed to prove beyond a reasonable doubt that the fatal shot was fired in the City of Newark. The confession was properly admitted. It was then for the jury to consider and

they could weigh it, accept or reject it, as they chose. *State v. Jefferson,* 131 *N. J. L.* 70. We have already disposed of the point as to where the fatal shot was fired.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, MCLEAN, SCHETTINO, JJ. 14.

*For reversal*—None.